UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

Patricia J. Curto,

                     Plaintiff,

     v.

Erie County Water Authority and
Earl L. Jann, Jr.,

                     Defendants.

**Report and Recommendation**

18-CV-695V

## I. INTRODUCTION

On March 2, 2017, someone from the Erie County Water Authority (the "Water Authority") left a notice at the property of plaintiff Patricia Curto. The notice referred to an application for service and contained a telephone number that plaintiff needed to call within 10 days to avoid termination of service. Plaintiff so far has not made clear whether she called the number. On March 21, 2017, the Water Authority shut off service to plaintiff's property. The termination of service eventually prompted plaintiff to sue the Water Authority and defendant Earl L. Jann, Jr. for a variety of state and federal violations. Because plaintiff invoked 42 U.S.C. § 1983 to assert her federal claims, defendants removed the case from state court. Each side now has a motion pending. Defendant filed a motion to dismiss plaintiff's *pro se* complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Dkt. No. 8.) In short, defendants argue that plaintiff has not pled any cognizable deprivation of state or federal rights, and that defendant Jann would have had immunity as the Executive Director of the Water Authority. Plaintiff opposes defendants' motion but also has filed her own motion for default judgment under Rule 55.[1] (Dkt. No. 15.) Plaintiff believes that

---

[1] Plaintiff erroneously cited Rule 54 and state law; the Court will construe the motion as one made under Rule 55.

defendants have defaulted because they failed to answer her complaint within 20 days of being served with it.

District Judge Lawrence J. Vilardo has referred this case to this Court under 28 U.S.C. § 636(b). (Dkt. No. 19.) The Court has deemed the pending motion submitted on papers under Rule 78(b). For the reasons below, the Court respectfully recommends granting defendants' motion without prejudice and denying plaintiff's motion.

## II. BACKGROUND

This case concerns allegations that the Water Authority shut off water service to plaintiff's property when it should not have done so. Plaintiff owns the property at 20 Hazel Court in the Town of Orchard Park.[2] On March 2, 2017, Water Authority Employee No. 146 visited plaintiff's property and left a cardstock notice hanging on a door. The notice looked like this:



(Dkt. No. 9-3 at 5.) The notice, on its face, is somewhat confusing. As can be seen above, a checkbox is marked next to the phrase, "Application for service." An application for service could

---

[2] In the complaint, plaintiff states that she owns the property but does not state whether she, or anyone else, lives there.

2

mean that no water service was being provided at plaintiff's property as of March 1, 2017; if so then the checkbox would conflict with the generic warning on the notice—which probably would fit better with the other checkboxes—that failure to contact the Water Authority within 10 days would result in termination of service. A more consistent interpretation would be that "service" meant "maintenance," such as on an underground pipe. In any event, plaintiff did not assert in her complaint that she contacted the Water Authority at any time, let alone within the time specified in the notice. Plaintiff also did not make clear what theory she has to explain why the Water Authority came to her property on March 2, 2017. The references to conversations with neighbors, combined with her denial that she applied for service, suggest some kind of instance of mistaken identity—*i.e.*, that the Water Authority received a genuine request for service from someone but went to the wrong property. At the same time, though, plaintiff explained in the complaint that her property has an exterior electronic water meter and that the meter was not read in or around March 2017. (Dkt. No. 1-2 at 5.) The mention of meter reading suggests that perhaps the Water Authority came to plaintiff's property for some reason related to billing. Another possibility is that someone in the neighborhood applied for maintenance on an underground pipe that affected plaintiff's property. No matter what brought the Water Authority to plaintiff's property—the Court is not making any factual findings on that point—the next major event involving the parties appears to have been a termination of water service at plaintiff's property on March 21, 2017. The Court infers from the complaint that a termination occurred from plaintiff's reference to the Water Authority having "illegally terminated service." (Dkt. No. 1-2 at 5.) Plaintiff did not explain in the complaint whether she contacted the Water Authority after termination or what she said. Plaintiff also did not explain how long the water was shut off at her property or whether the water remains off to this day.

Without an explanation of intervening events or communications, the complaint reads as if the next event leading to this case occurred on April 11, 2017, when plaintiff served the Water Authority with a verified notice of claim. The complaint contains no information about any communications or interactions that plaintiff had with the Water Authority for the rest of 2017 or in early 2018. Plaintiff filed her summons and complaint in New York State Supreme Court, Erie County, on May 24, 2018. Plaintiff named two defendants: the Water Authority and Jann, the Executive Director of the Water Authority during the events in question. The complaint does not contain clearly labeled causes of action but does contain a number of allegations in the last several paragraphs. Plaintiff accuses the Water Authority of negligent hiring, supervision, and training of its employees. Plaintiff accuses the Water Authority of state and federal statutory and constitutional rights. Plaintiff accuses the Water Authority of violations of "human rights and civil rights under state and federal law." (Dkt. No. 1-2 at 6.) Paragraph 33 contains a list of purported violations and damages claims; the Court reprints paragraph 33 here in its entirety:

> By reason of the facts and circumstances stated above plaintiff Patricia Curto is being subjected to continuing acts, policy/practice and/or a conspiracy to:
>
> —illegally entry [*sic*] of plaintiffs posted property, trespass upon plaintiff's posted property;
>
> —violation of and denial of plaintiff's state and federal constitutional rights: due process; and/or equal protection and/or privacy; and/or peaceful enjoyment of her property; liberty; pursuit of happiness and etc.;
>
> —Harassment, and/or retaliation, and/or intimidation;
>
> —Discriminatory and/or disparage [*sic*] treatment;
>
> —Negligent hiring, training, retention and employment;
>
> —Violation of plaintiff's civil rights and human rights under state and federal law;
>
> —slander, libel and defamation;

4

>   —Failure to perform the duties of a public/civil servants;
>
>   —Fraud and/or abuse of power/authority;
>
>   —Conspiring to violate plaintiff's rights and to violate the law;
>
>   —42 USC 1983 violation of constitutional rights;
>
>   —42 USC 1985 conspiracy;
>
>   —the defendants' willful, wanton, conscious and deliberate disregard of the plaintiff's rights and interests and for conduct so reckless as to amount to such disregard;
>
>   —As a result of the aforesaid the resulting or naturally occurring injuries and damages is entitled to monetary compensation and is entitled to punitive damages.

(Dkt. No. 1-2 at 6.) Plaintiff seeks $1 million in damages.

Defendants removed this case to this Court on June 19, 2018 on the basis of plaintiff's references in the complaint to violations of federal statutory and constitutional rights. (Dkt. No. 1.) At this point, some of the procedural timeline of the case requires a brief explanation because it affects the pending motion for default judgment. Defendants were served with the complaint on May 30, 2018. (Dkt. No. 1-3.) When defendants removed the case, they had not yet answered the complaint. Because defendants had not answered the complaint in state court at the time of removal, Rule 81(c)(2) applied. Rule 81(c)(2) gave defendants the latter of several possible deadlines to answer "or present other defenses or objections under these rules"; under the circumstances here, the latest deadline would have come under Rule 81(c)(2)(C): seven days after June 19, meaning June 26, 2018. On June 20, 2018, defendants requested an extension of the deadline to answer or to present defenses or objections. (Dkt. No. 3.) Judge Vilardo granted the request and extended the deadline to July 19, 2018. (Dkt. No. 4.) Defendants then filed their motion to dismiss on July 19, 2018. The Court will say more about this chronology later.

5

As the Court just noted, defendants filed the pending motion to dismiss on July 19, 2018. (Dkt. No. 8.) Defendants expended considerable effort interpreting plaintiff's claims in the light most favorable to her, and they addressed those claims in detail. (Dkt. No. 10.) Very briefly, defendants argue that plaintiff has not articulated a cognizable claim that pertains to equal protection, due process, or any other federal statutory or constitutional right. Defendants argue further that defendant Jann is immune from suit under county statutes; cannot be held vicariously liable under Section 1983; and alternatively would be entitled to qualified immunity for acting within the scope of his employment in a way that did not violate any clearly established federal rights. Defendants also propose an alternative resolution in which the Court dismissed only the federal claims and declined to exercise supplemental jurisdiction over any claims arising under state law.

Plaintiff responded to defendants' motion in several ways. On July 30, 2018, plaintiff filed a reply in which she argued that defendants missed their deadline to answer the complaint. (Dkt. No. 11 at 2.) This reply also contained an argument that effectively is a motion for remand to state court on the basis that plaintiff's claims under state law predominate. (Dkt. No. 11 at 3.) On August 8, 2018, plaintiff filed a declaration that reiterated the facts of the complaint; repeated the argument that defendants missed their deadline to answer and thus were in default; and corrected what plaintiff believes are improper inferences that defendants made in their motion papers. (Dkt. No. 12.) On September 6, 2018, plaintiff filed the pending motion for default judgment. Plaintiff again repeated her argument for default as follows: Defendants were served on May 30, 2018; they had 20 days to answer until June 19, 2018; they did not write to Judge Vilardo for an extension until June 20, 2018; the request therefore was invalid, and defendants now are in default. On September 27, 2018, plaintiff filed a supplemental memorandum of law in support of default judgment. (Dkt. No. 17.) On September 17, 2019, plaintiff wrote an additional letter to Judge Vilardo. (Dkt. No. 18.)

Following referral to this Court, this Court set a deadline for defendants to respond to the motion for default judgment. (Dkt. No. 20.) Defendants filed a response on October 9, 2019, arguing that, under the chronology of the case, Rule 81(c)(2)(C) extended their time through June 26, 2018, making the extension request timely. On October 25, 2019, plaintiff filed a reply that reiterated previous factual assertions but also contained one new fact and one new argument. The new fact was that plaintiff confirmed something missing from the complaint: There has been no water service at plaintiff's property since March 21, 2017. (Dkt. No. 22 at 2.) The new argument is that defendants somehow altered Judge Vilardo's order granting an extension of time. Judge Vilardo's order extended defendants' "time to answer the complaint" to July 19, 2018. (Dkt. No. 4.) Plaintiff interprets the order literally to mean that Judge Vilardo gave defendants extra time only to answer and not to pursue any other recourse. (Dkt. No. 22 at 4.) Since defendants elected to pursue the recourse of a motion to dismiss, according to plaintiff, they chose to pursue an untimely and invalid course of action and therefore are in default.

III. **DISCUSSION**

    A. *Motion for Default Judgment*

"Default judgment is appropriate when a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise. Entry of a party's default pursuant to Fed. R. Civ. P. 55(a) is a mandatory prerequisite for entry of a default judgment pursuant to Rule 55(b)." *United States v. Assorted Silver & Gold Bars & Coins Valued at Approximately $23,445.00*, No. 12-CV-6455-CJS-JWF, 2014 WL 2882444, at *2 (W.D.N.Y. June 25, 2014) (citation omitted). There is one minor and one major problem with plaintiff's argument for default judgment. The minor problem is that plaintiff did not first request entry of default under Rule 55(a). The major problem is that entry of default would be unwarranted

7

here because defendants' request for an extension and subsequent motion to dismiss were timely. As the Court explained above in its chronology of the case, Rule 81(c)(2)(C) gave defendants until June 26, 2018 to answer or to "present other defenses or objections under these rules." Before the June 26, 2018 deadline passed, defendants asked for and received an extension to July 19, 2018. The language in Rule 81(c)(2)(C) referring to "other defenses or objections under these rules" refers, in this instance, to the combination of Rule 6(b) allowing extensions of time by court order and Rule 12(a)(4) altering the time to answer when a motion under Rule 12(b) is filed instead. Even if the Court wanted to read Judge Vilardo's extension order as narrowly as plaintiff does, the order would not override defendants' right under Rule 12(a)(4) to alter the time to answer by filing a motion. Defendants filed the pending motion to dismiss on July 19, 2018, within the time to answer set by Judge Vilardo. The motion therefore is timely. Additionally, Rule 12(a)(4) specifies that defendants do not have to answer the complaint unless the motion to dismiss ultimately is denied with prejudice—an event that will not happen yet, for reasons explained below.

For the above reasons, then, the Court respectfully recommends denying plaintiff's motion for default judgment.

### B. Motion to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

8

(internal quotation marks and citations omitted). Courts assess Rule 12(b)(6) motions "accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 61 (2d Cir. 2010) (internal quotation marks and citation omitted). "On a motion to dismiss, the court may consider any written instrument attached to the complaint as an exhibit or any statements or documents incorporated in it by reference." *Yak v. Bank Brussels Lambert*, 252 F.3d 127, 130 (2d Cir. 2001) (editorial and internal quotation marks and citation omitted). "Simply stated, the question under Rule 12(b)(6) is whether the facts supporting the claims, if established, create legally cognizable theories of recovery." *Cole-Hoover v. Shinseki*, No. 10-CV-669, 2011 WL 1793256, at *3 (W.D.N.Y. May 9, 2011) (internal quotation marks and citation omitted).

As a preliminary matter, the Court must decide whether to consider certain documents that have become part of the record but lie outside of the complaint. "Because a Rule 12(b)(6) motion challenges the complaint as presented by the plaintiff, taking no account of its basis in evidence, a court adjudicating such a motion may review only a narrow universe of materials. Generally, we do not look beyond facts stated on the face of the complaint, documents appended to the complaint or incorporated in the complaint by reference, and matters of which judicial notice may be taken." *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (internal quotation and editorial marks and citation omitted). "Where a document is not incorporated by reference, the court may neverless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document integral to the complaint. However, even if a document is integral to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document. It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (internal quotation

9

marks and citations omitted). "A document is integral to the complaint where the complaint relies heavily upon its terms and effect. Merely mentioning a document in the complaint will not satisfy this standard; indeed, even offering limited quotations from the document is not enough. In most instances where this exception is recognized, the incorporated material is a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls, but which for some reason—usually because the document, read in its entirety, would undermine the legitimacy of the plaintiff's claim—was not attached to the complaint." *Goel*, 820 F.3d at 559 (internal quotation and editorial marks and citations omitted). Here, the Court will consider the color copy of the Water Authority notice that appears in the motion papers and that the Court has reproduced above. (Dkt. No. 9-3 at 5.) Plaintiff did not attach the notice to her complaint, but the parties do not dispute the accuracy of the copy in the record. The parties also do not dispute that the notice was one of the central events in plaintiff's allegations.

On substance, the Court is hesitant to recommend dismissal of plaintiff's complaint with prejudice. There are obvious deficiencies with plaintiff's current complaint. Plaintiff does not set forth any allegation about why the Water Authority came to her property in the first place. The notice that plaintiff received made reference to an application for service, but plaintiff has not alleged more clearly whether her situation is a case of mistaken identity—*i.e.*, someone requested new service, just not her—or whether the Water Authority miscommunicated some other reason to come to her property. Plaintiff does not explain whether she did contact the Water Authority after receiving the notice, and if she did not, why not. *Compare, e.g., Manza v. Newhard*, 915 F. Supp. 2d 638, 647 (S.D.N.Y. 2013) ("The Court concludes defendants provided adequate pre-deprivation due process by notifying Manza in the December 15, 2008, water bill whom to contact to dispute the bill, and then by affording Manza multiple informal opportunities in February and March 2009 to

discuss the billing dispute with the persons empowered to correct mistakes well in advance of the termination of service in June 2009.") *with Gruber v. Erie Cty. Water Auth.*, No. 10-CV-388, 2012 WL 400786, at *3 (W.D.N.Y. Feb. 7, 2012) (denying motion for judgment on the pleadings in part because plaintiffs alleged that "Defendants sent numerous notices seeking payment for water service, but that none of those notices contained any provision or notification for a hearing and that a written request for such a hearing was ignored by Defendants"). Plaintiff asserts in the current complaint that the Water Authority terminated service on March 21, 2017 but does not assert when, if ever, water service was restored; the mention of a continued termination appears only in plaintiff's motion papers. Plaintiff makes repeated references to "male homeowners" and "younger homeowners," in an obvious attempt to set up an allegation that she was singled out for Equal Protection purposes. Nowhere, however, does plaintiff allege that there actually were similarly situated homeowners who received more favorable treatment. Put another way, if some sort of problem existed only at one property—plaintiff's property, or someone else's property in the event of mistaken identity—then why would the Water Authority need to contact any other homeowners? Plaintiff makes references to how defendant Jann and the Water Authority had policies in place that led to deprivations of her rights, an obvious attempt to fit her case under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). Plaintiff at this early stage does not necessarily have to know what policies might have been in place, but the complaint offers no details that would allow for a reasonable inference that a defective policy exists. *See Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995) ("The mere assertion that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference.") (internal quotation and editorial marks and citation omitted); *Donohue v. Manetti*, No. 15-CV-636 (JFB)(GRB), 2016 WL 740439, at *6 (E.D.N.Y. Feb. 24, 2016) (noting that "conclusory

allegations of a municipal custom or practice of tolerating official misconduct are insufficient to demonstrate the existence of such a custom unless supported by factual details" but allowing a *pro se* prisoner to proceed with a *Monell* claim based on the prison's alleged acknowledgment of a defective policy). Finally, and related to the Court's previous point, plaintiff makes general assertions of federal constitutional rights such as due process, equal protection, privacy, enjoyment of property, liberty, pursuit of happiness, and "etc." Plaintiff again need not prove anything at the pleading stage, but she needs to be much more specific about alleging exactly which federal rights were violated and what damages ensued.

Despite all of the above infirmities with the current complaint, one chance to amend would be appropriate. "Courts are obliged to construe the pleadings of a *pro se* plaintiff liberally. If a liberal reading of the complaint gives any indication that a valid claim might be stated, courts must grant leave to amend the complaint." *McCluskey v. New York State Unified Court Sys.*, No. 10-CV-2144 JFB ETB, 2010 WL 2558624, at *2 (E.D.N.Y. June 17, 2010) (internal quotation marks and citations omitted). Plaintiff filed her complaint in state court, meaning that her complaint was under different pleading standards at the time of filing. *Cf. James v. Cent. Casting N.Y.*, No. 13 CIV. 3859 GBD JCF, 2014 WL 7653395, at *6 (S.D.N.Y. July 24, 2014) (*pro se* complaint removed from state court was dismissed without prejudice to one chance to amend), *report and recommendation adopted*, No. 13 CIV. 3859 GBD JCF, 2015 WL 304119 (S.D.N.Y. Jan. 20, 2015). As for the merits, plaintiff has raised just enough of a possibility that she was improperly singled out that the Court should afford her one opportunity to elaborate on what she means. *See Stokes v. Vill. of Wurtsboro*, 818 F.2d 4, 6 (2d Cir. 1987) (dismissal reversed where *pro se* litigants alleged improper termination of water service). Finally, plaintiff mentioned at least once in her papers that the Water Authority's removal was improper and that the case should be returned to state court. (Dkt. No. 11 at 3.) A return to state

12

court will require a formal motion for remand and an opportunity for the Water Authority to respond. If plaintiff wants to reframe an amended complaint to assert only state-level claims then perhaps the parties would be able to stipulate to a remand.

## IV.   CONCLUSION

For all of the foregoing reasons, the Court respectfully recommends granting defendants' motion to dismiss (Dkt. No. 8), but without prejudice. Plaintiff should be given leave to file an amended complaint, within 30 days of final adoption of this Report and Recommendation, that corrects the deficiencies mentioned above. Failure to file an amended complaint within that time would make the dismissal with prejudice. The Court further recommends denying plaintiff's motion for default judgment (Dkt. No. 15).

## V.   OBJECTIONS

A copy of this Report and Recommendation will be sent to plaintiff by first-class mail, and to counsel for defendants by electronic filing, on the date below. "Within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Any objections must be filed electronically with the Clerk of the Court through the CM/ECF system.

"As a rule, a party's failure to object to any purported error or omission in a magistrate judge's report waives further judicial review of the point." *Cephas v. Nash*, 328 F.3d 98, 107 (2d Cir. 2003) (citations omitted); *see also Mario v. P & C Food Markets, Inc.*, 313 F.3d 758, 766 (2d Cir. 2002) ("Where parties receive clear notice of the consequences, failure timely to object to a magistrate's report and recommendation operates as a waiver of further judicial review of the magistrate's decision.") (citation omitted). "We have adopted the rule that failure to object timely to a magistrate

judge's report may operate as a waiver of any further judicial review of the decision, as long as the parties receive clear notice of the consequences of their failure to object. The rule is enforced under our supervisory powers and is a nonjurisdictional waiver provision whose violation we may excuse in the interest of justice." *United States v. Male Juvenile (95-CR-1074)*, 121 F.3d 34, 38–39 (2d Cir. 1997) (internal quotation marks and citations omitted).

"Where a party only raises general objections, a district court need only satisfy itself there is no clear error on the face of the record. Indeed, objections that are merely perfunctory responses argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original papers will not suffice to invoke de novo review. Such objections would reduce the magistrate's work to something akin to a meaningless dress rehearsal." *Owusu v. N.Y. State Ins.*, 655 F. Supp. 2d 308, 312–13 (S.D.N.Y. 2009) (internal quotation and editorial marks and citations omitted).

SO ORDERED.

                                                                      __/s Hugh B. Scott_____
                                                                      Hon. Hugh B. Scott
                                                                      United States Magistrate Judge

DATED: November 26, 2019