**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

═══════════════════════════════════

PATRICIA J. CURTO,

                    Plaintiff,

     v.

ERIE COUNTY WATER AUTHORITY, et al.,

                    Defendants.

**Report &**
**Recommendation**
18-CV-695-JLS-JJM

═══════════════════════════════════

## INTRODUCTION

This action arises from the termination of plaintiff Patricia J. Curto's water service by defendant Erie County Water Authority (the "Water Authority"). Curto, acting pro se, raises a variety of state and federal claims based on the alleged misconduct of the Water Authority and its executive director, defendant Earl L. Jann, Jr. In the previous Report & Recommendation — which District Judge Sinatra adopted in full — Magistrate Judge Hugh B. Scott recommended dismissing Curto's complaint with leave to amend. See Docket # 23, 29. Curto has filed an amended complaint, Docket # 30, and Defendants again move to dismiss under Federal Rule of Civil Procedure 12(b)(6). Docket # 33. The motion has been referred to the undersigned pursuant to 28 U.S.C. § 636(b). Docket # 45. For the reasons that follow, Defendants' motion should be GRANTED IN PART and DENIED IN PART.

## LEGAL STANDARD

FRCP Rule 12(b)(6) authorizes the Court to dismiss a complaint if it fails to allege a claim for which relief may be granted. In deciding such a motion, the Court "is required to accept all 'well-pleaded factual allegations' in the complaint as true." Lynch v. City of New York, 952 F.3d 67, 74-75 (2d Cir. 2020) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009)). However, although the Court must "accept the plaintiff's factual allegations as true and draw all reasonable inferences in her favor," it need not credit "legal conclusions couched as factual allegations or naked assertions devoid of further factual enhancement." Mandala v. NTT Data, Inc., 975 F.3d 202, 207 (2d Cir. 2020) (internal quotation marks, ellipsis, and brackets omitted). In addition, where the complaint was filed pro se, "it must be construed liberally to raise the strongest arguments it suggests." Nielsen v. Rabin, 746 F.3d 58, 63 (2d Cir. 2014).

"To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts to state a claim to relief that is plausible on its face. A claim is plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Adia v. Grandeur Mgmt., Inc., 933 F.3d 89, 92 (2d Cir. 2019) (internal citation, quotation marks omitted). "The plausibility

standard is not akin to a probability requirement.  A well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable, and that a recovery is very remote and unlikely." Nielsen, 746 F.3d at 62 (internal citation, brackets, ellipsis, and quotation marks omitted).

## FACTUAL BACKGROUND

Curto owns a property located at 20 Hazel Court in Orchard Park.  The property receives water service through the Water Authority, whose executive director was Earl L. Jann at the time of these events.

Curto alleges that on March 2, 2017, a Water Authority employee went onto her property and left a notice on the doorknob of the front door.  A copy of the notice is included in the amended complaint:

## NOTICE

Erie County Water Authority
350 Ellicott Square Bldg.
Buffalo, NY 14203

This property is being serviced by the Erie County Water Authority. Please call our Customer Service Department immediately at:

**849-8444**

Failure to hear from you in 10 days will result in the termination of water service

☐ Meter change
☐ Meter set
☐ Meter reading
☒ Application for service
☐ Inspection of backflow device
☐ _____

Date 3/1/17   By 146

Docket # 30 at 3.  After placing the notice on the doorknob, the
employee crossed Curto's property and walked towards the adjacent
neighbor's house, where he spoke with the neighbor.  In the amended
complaint, Curto does not disclose the content of the discussion
— she alleges only that the employee and her neighbor had "an
extensive conversation" about Curto's "private ECWA information."
Id. at 4.  Curto states that she has "No Trespassing" signs posted
and visible on her property.

The parties dispute the purpose and meaning of the notice.
Curto's theory is that the Water Authority engaged in a malicious
ruse to deprive her of water service.  See Docket # 44 at 7
(alleging "[t]his was a set up . . . it was a sure bet that [her]
water service would be terminated").  Her theory is derived from
her interpretation of the notice and, specifically, the notation
that there had been an "application for service."  Curto construes
that phrase to mean that a new customer was "applying for" water
service at her address.  See Docket # 30 at 2.  From that phrase,
Curto postulates the following scenario:  First, the Water
Authority pretended that a "new homeowner" had "applied for" water
service at her address.  See Docket # 42 at 12; Docket # 44 at 13.
Second, the Water Authority sent the above notice concerning an
"application for service" and requested that the "new homeowner"
contact the Water Authority upon threat of termination.  Third,

4

when the "new homeowner" inevitably failed to contact customer service (because the homeowner did not exist), the Water Authority terminated water service at Curto's address.  See Docket # 12 at 7-8; Docket # 42 at 12; Docket # 44 at 8, 13.  In short, the Water Authority fabricated an elaborate pretext to terminate Curto's water service, premised on a fake "new" homeowner.

The Water Authority offers a more mundane explanation.  It asserts that it initially provided the notice to Curto not as part of some fraudulent scheme, but because it needed "to perform maintenance service to her watermeter."  Docket # 35 at 10. Termination would follow if Curto failed to contact the Water Authority and provide access to the property.  The Water Authority's explanation appears to be consistent with the Water Authority's tariff, which indicates that water service "may be discontinued" if a customer refuses "reasonable access to the property for the purpose of reading, repairing, replacing, testing or removing meters."[1]  Docket # 9-1 at 16.

Regardless, it is unclear what action Curto took in response to the notice.  Her amended complaint seems to suggest that she

---

[1] The Court may take judicial notice of, and therefore consider, the Water Authority's tariff.  See Zurich Am. Ins. Co. v. S. Conn. Gas. Co., 442 F. Supp. 3d 510, 513 (D. Conn. 2020) (noting that on a motion to dismiss, a court may "consider matters of which judicial notice may be taken," which "include tariffs publicly filed with a regulatory authority"); see also N.Y. Pub. Auths. L. § 1054(10) (requiring the Water Authority to file its "rules and by-laws" with the county clerk's office); Docket # 34 at 2.

did not call the Water Authority, as she asserts that she had "no legal obligation" to do so.  See Docket # 30 at 2; see also Docket # 44 at 7 (claiming it is "irrelevant" whether she contacted the Water Authority).  But in her briefing, she also appears to claim that she did call the Water Authority.  See Docket # 44 at 6 (stating that the Water Authority's "refusal to discuss (on the phone) the alleged application for water service" forced her to go to the Water Authority's office in person); see also Docket # 42 at 11-12.  However, Curto states that when she called the Water Authority, she did not inquire about the notice or the threatened termination; instead, she asked for information about "another customer's application for (water) service."  Docket # 44 at 6; see also id. at 12.  That is, Curto was still operating under her belief that a new customer had applied for water service at her home, and she sought information about that new customer, which the Water Authority apparently did not supply.  See Docket # 44 at 6.

On March 21, 2017, Curto alleges that a Water Authority employee came to her home, "turned off the water, left the property and then re-entered the [] property, before leaving and driving away."  Docket # 30 at 4.

On March 22, 2017, Curto visited the Water Authority's office and asked to have service restored.  The Water Authority did not

6

restore service, and the Hazel Court property has been without water service ever since. On April 11, 2017, Curto served a notice of claim on the Water Authority. See Docket # 9-3 at 2-4.

On September 16, 2018, one or more Water Authority employees entered Curto's property. The amended complaint does not disclose what the employees did at the property or why they did it. See Docket # 30 at 4.

Separate and apart from the termination of water service, Curto challenges the Water Authority's billing practices. Curto alleges that, in the three billing cycles before her water service was terminated, the Water Authority did not calculate her bills based on water-meter readings or the water-meter postcards that she sent. ECF No. 30 at 4, 5. As a result, the Water Authority's calculations for her water usage were incorrect and the bills were inaccurate. Similarly, after service was terminated, Curto received a final bill that was not calculated based on accurate water-meter readings. Id. at 5.

In short, the Court can fairly discern five grievances that Curto has against Defendants:

1. The Water Authority terminated her water service for an invalid reason;

2. The Water Authority terminated her water service without adequate notice of the reason for the termination and without affording her an opportunity to be heard;

3. She has been forced to vacate her home since the loss of water service;

4. Water Authority employees trespassed on her property on several occasions; and

5. The Water Authority overcharged her on a number of water bills.

In May 2018, Curto brought suit against Defendants in New York state court. The case was removed to federal court in June 2018. In her amended complaint, Curto lists over a dozen state and federal causes of action that she seeks to bring against Defendants. She describes her claims as follows:

> [P]laintiff Patricia Curto is being subjected to continuing acts, policy/practice and/or conspiracy to:
> -illegally entry of plaintiff's posted property, trespass upon plaintiff's posted property
> -violation of and denial of plaintiff's state and federal constitutional rights: due process; and/or equal protection and/or privacy; and/or peaceful enjoyment of her property; liberty; pursuit of happiness and etc
> -Harassment, and/or retaliation, and/or intimidation;
> -Discriminatory and/or disparage [sic] treatment;
> -Negligent hiring, training, retention and employment;
> -Violation of plaintiff's civil rights and human rights under state and federal law;
> -slander, libel and defamation;
> -Failure to perform the duties of a public/civil servants;
> -Fraud and/or abuse of power/authority;
> -Conspiring to violate plaintiff's rights and to violate the law;
> -42 USC 1983 violation of constitutional rights;
> -42 USC 1985 conspiracy;
> -the defendants [sic] willful, wanton, conscious and deliberate disregard of the plaintiff's rights and interests and for conduct so reckless as to amount to such disregard

Docket # 30 at 7.

## DISCUSSION

Defendants move to dismiss the amended complaint, arguing that Curto has failed to set forth plausible state or federal claims.  The Court examines the claims below.

At the outset, the Court makes a few points that will guide and focus its analysis. First, the Court wishes to emphasize its obligation to construe a pro se complaint liberally to raise "the strongest arguments it suggests."  Nielsen, 746 F.3d at 63. Curto's amended complaint is not a model of clarity, but the Court is able to understand the conduct Curto is seeking to challenge and, in a basic sense, why she finds that conduct wrongful.  Once viewed through the correct legal frameworks, at least some of Curto's claims appear to present rational theories for relief.

Second, one of the difficulties the Court faces is that neither party has fully briefed the myriad legal issues that Curto's claims implicate.  The Court does not necessarily fault either party for this — as Curto is proceeding pro se and Defendants were faced with responding to a sometimes vague and unclear set of allegations — but it leaves the Court without the benefit of full legal briefing.  For that reason, and consistent with its obligation to pro se litigants, the Court would permit those claims that arguably state valid causes of action to advance to discovery, but would await further development and briefing to

9

make any definitive pronouncements about their ultimate legal or factual viability.

Third, the Court will not consider Curto's overarching theory that the Water Authority engaged in a ruse to deprive her of water service. Ordinarily, of course, a court must "accept as true all factual allegations" in the complaint. Nielsen, 746 F.3d at 62. That being said, a court need not credit conclusory, fanciful, or speculative allegations, it need not "suspend common sense when analyzing the complaint," AJ Energy LLC v. Woori Bank, 829 F. App'x 533 (2d Cir. 2020) (summary order), and it may reject claims that are implausible "in light of [the] factual allegations in the pleading itself." Krys v. Pigott, 749 F.3d 117, 133 (2d Cir. 2014).

Curto's allegation is that, spontaneously and without reason, the Water Authority targeted her for a ruse, in which it invented a fake "new homeowner," pretended that the homeowner applied for new water service at Curto's address, sent out a real notice to Curto's home (thus, for some reason, revealing the scheme to Curto), and then terminated water service on the concocted ground that the new homeowner had not called its customer service department. See Docket # 28 at 2; Docket # 38 at 9; Docket # 44 at 7-8, 13. Curto's theory seems to be wholly derived from her interpretation of the notice, which, while admittedly ambiguous,

simply cannot bear the weight Curto places on it. See Mira v. Kingston, 715 F. App'x 28, 30 (2d Cir. 2017) (summary order) (rejecting plaintiff's claim of surveillance by and a conspiracy between her first and second employers, where plaintiff only alleged that the two employers had a meeting on one occasion and that one meeting participant commented "she would close her blinds while in New York because of possible surveillance"). This is not a case where Curto's theory is simply unlikely; it defies plausibility in light of the underlying factual basis she alleges.

Consequently, the Court will not evaluate the adequacy of Curto's claims by reference to her overarching theory that the Water Authority sent her the notice as part of a ruse. The Court will proceed on the assumption that the Water Authority sent the notice because it intended to perform maintenance on the property. The Court does so because this explanation may be reasonably inferred from the amended complaint's allegations, and because Curto offers no alternative explanation beyond the one rejected above.

With these caveats, the Court turns to Curto's claims.

## I.   Claims against Executive Director Jann

Curto brings suit against both the Water Authority and Executive Director Jann, though Executive Director Jann's involvement in the underlying misconduct is not evident. The only

11

specific allegation that relates to Executive Director Jann is Curto's claim that he failed "to train and supervise subordinates with scienter that such failure may foreseeably lead to specific types of constitutional violations." Docket # 30 at 6. This is a legal conclusion, not a factual allegation, and Curto does not marshal facts to demonstrate Executive Director Jann's involvement. See Estate of Umar v. Bensch, No. 18-CV-1414, 2020 WL 3491633, at *3 (W.D.N.Y. Jan. 9, 2020) ("[C]onclusory references to 'negligent' behavior are mere legal conclusions . . . .").

Absent supporting factual allegations, Executive Director Jann cannot be held liable for any of the constitutional violations Curto raises. It is well-established that a supervisor may not be held liable under Section 1983 merely because he "occupied a supervisory position." Powell v. Johnson, No. 11-CV-1304, 2013 WL 2181268, at *5 (N.D.N.Y. May 20, 2013). Likewise, as to Curto's state-law claims, Executive Director Jann cannot be held liable solely given his supervisory role and without any allegation of fault.[2] See Connell v. Hayden, 83 A.D.2d 30, 50-51 (N.Y. App. Div.

---

[2] Curto does not explain the structure of the Water Authority, the nature of Executive Director Jann's role, or the level of control he maintains over subordinates, so there is insufficient information to conclude that he could be treated as the "employer" of Water Authority employees for purposes of respondeat superior. See Connell, 83 A.D.2d at 50 ("The employer of [a supervisor and a subordinate] is liable under respondeat superior, but the supervisor is not because he lacks the right to select, control, and discharge the employee which is essential to the imposition of vicarious liability under that doctrine.").

1981) ("The doctrine of <u>respondeat</u> <u>superior</u> does not apply to impose vicarious liability upon supervisors. . . .  This does not mean that a supervisor may not be liable for the injuries caused by the conduct of one of his subordinates. It does mean that his liability is not vicarious, that is, without fault on his part."); <u>see also</u> <u>Northrop v. Lopatka</u>, 610 N.E.2d 806, 810 (Ill. App. Ct. 1993) ("The common law does not impose strict liability on an employee who is merely the supervisor, but not the employer, of the employee who commits the tort.").

Accordingly, given the absence of factual allegations of Executive Director Jann's involvement in the underlying misconduct, all claims against him should be dismissed.

## II.  <u>Claims against the Water Authority</u>

<u>Procedural Due Process as to Termination of Water Service</u>: Curto's amended complaint can fairly be read to include a procedural due process claim, as she asserts that Defendants' misconduct — including their decision to terminate water service — violated her right to "due process."  Docket # 30 at 7.

Defendants move to dismiss that claim, arguing that Curto has not sufficiently alleged a procedural due process claim, since she does not identify "any property right," describe "what process was due to her," or explain how "Defendants have deprived her of [her due process] right."  <u>Id.</u> at 18.

13

Curto's procedural due process claim should be allowed to proceed. Defendants may be correct that Curto has not expressly identified the required elements for a procedural due process claim, but the nature of Curto's claim is fairly discernible from her amended complaint: she alleges that her water service was terminated without notice or an opportunity to be heard. See Docket # 30 at 2 (criticizing the clarity of the March 2, 2017 notice); id. (alleging that "there are no hearings" for these types of terminations). As set forth below, a procedural due process claim at least appears to be cognizable, and absent more developed argument, the Court would decline to dismiss Curto's claim at this early stage.

The Water Authority is a "municipal entity" subject to suit under 42 U.S.C. § 1983 for violations of individuals' federal constitutional rights, including the right to procedural due process. See Matusick v. Erie Cty. Water Auth., 757 F.3d 31, 62-63 (2d Cir. 2014); McMenemy v. City of Rochester, 241 F.3d 279, 285-86 (2d Cir. 2001). To prevail on a claim for deprivation of procedural due process rights against a municipal entity, the plaintiff must show that she "possessed a protected liberty or property interest," and that, due to the entity's policies or customs, "[s]he was deprived of that interest without due process." McMenemy, 241 F.3d at 286. Actual damages or injuries are not

14

necessary.  See Poventud v. City of New York, 750 F.3d 121, 136 (2d Cir. 2014) (noting that "the denial of procedural due process" is "actionable for nominal damages without proof of actual injury," and explaining that "the right to procedural due process is 'absolute' in the sense that it does not depend upon the merits of a claimant's substantive assertions").

The first prong may be met, as Curto has a protected interest in water service.  See, e.g., Manza v. Newhard, 470 F. App'x 6, 8 (2d Cir. 2012) (summary order) (noting that "the cessation of essential [utility] services for any appreciable time works a uniquely final deprivation of a property interest" (internal quotation marks omitted)); Mansfield Apartment Owners Ass'n v. City of Mansfield, 988 F.2d 1469, 1474 (6th Cir. 1993) ("It is well settled that the expectation of utility services rises to the level of a 'legitimate claim of entitlement' encompassed in the category of property interests protected by the due process clause."); Ludwig v. City of Jamestown, N.Y., 518 F. Supp. 2d 484, 498-99 (W.D.N.Y. 2007); see also Memphis Light, Gas & Water Div. v. Craft, 436 U.S. 1 (1978).

As to the second prong, the Court must determine what process Curto was due before her water service was terminated.  Generally, "[i]n determining what process is due, a court must balance three factors: (1) the private interest that will be affected by the

official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." McMenemy, 241 F.3d at 288 (internal quotation marks omitted).

In the context of the termination of utility services, a necessary component of due process is a pre-deprivation opportunity to be heard. See Memphis Light, 436 U.S. at 18. As the U.S. Supreme Court opined:

> [S]ome administrative procedure for entertaining customer complaints prior to termination is required to afford reasonable assurance against erroneous or arbitrary withholding of essential services. The customer's interest is self-evident. Utility service is a necessity of modern life; indeed, the discontinuance of water or heating for even short periods of time may threaten health and safety. And the risk of an erroneous deprivation, given the necessary reliance on computers, is not insubstantial. . . .
>
> Ordinarily, due process of law requires an opportunity for some kind of hearing prior to the deprivation of a significant property interest. On occasion, this Court has recognized that where the potential length or severity of the deprivation does not indicate a likelihood of serious loss and where the procedures underlying the decision to act are sufficiently reliable to minimize the risk of erroneous determination, government may act without providing additional advance procedural safeguards . . . . The factors that have justified exceptions to the requirement of some prior process are not present here. Although utility service may be restored ultimately, the cessation of essential

16

services for any appreciable time works a uniquely final deprivation.

Memphis Light, 436 U.S. at 18-20 (internal citations, quotation marks, and footnotes omitted).

By extension, a utility customer must also receive adequate notice of the pre-deprivation opportunity to be heard.  "The purpose of notice under the Due Process Clause is to apprise the affected individual of, and permit adequate preparation for, an impending 'hearing.'"  Id. at 14.  In Memphis Light, the Court found a violation of procedural due process based on a utility's failure to "provide notice reasonably calculated to apprise [customers] of the availability of an administrative procedure to consider their complaint of erroneous billing."  Id. at 22; see also id. at 14 ("Notice . . . does not comport with constitutional requirements when it does not advise the customer of the availability of a procedure for protesting a proposed termination of utility service as unjustified.").  Other courts have found termination notices wanting on similar grounds.  See Ludwig, 518 F. Supp. 2d at 501; Real Estate Investors Ass'n v. City of Jamestown, No. 00-CV-815, 2004 WL 2202591, at *3-4 (W.D.N.Y. Sept. 30, 2004).

In short, before any termination of water service, Curto was constitutionally entitled to pre-termination notice and an opportunity to be heard.  The notice she did receive, however, was

17

vague and unclear.   It indicates that there was an "application for service" on March 1, but it does not specifically reference Curto or her address.   <u>See</u> Docket # 30 at 3.   Standing alone, the phrase "application for service" has no obvious meaning.   It could mean, as Curto inferred, that the Water Authority had received an application to provide water service at the Hazel Court property, or it could mean, as the Water Authority contends, that the Water Authority was intending to provide maintenance services at the property.   The notice goes on to say:

> This property is being serviced by the [Water Authority].   Please call our Customer Service Department immediately at:
> **849-8444**
> Failure to hear from you in 10 days will result in the termination of water service.

<u>Id.</u>

Viewing the notice as a whole, it can be said to convey some information — <u>e.g.</u>, what action the Water Authority is taking (service), what action the homeowner must take (call a telephone number), and the consequences of inaction (termination of water service) — but a reader would likely be left with more questions than answers.   The notice does not indicate what kind of service is being performed, what obligations such service imposes on the homeowner, or, most importantly, why the failure to call a number results in the termination of service, and what remedies the

18

homeowner has to challenge the proposed service or the potential termination.

Thus, it could be reasonably argued that the Water Authority left a threat of termination on Curto's doorstep and provided little context by which Curto could assess what was happening and why. See Memphis Light, 436 U.S. at 14 ("The purpose of notice under the Due Process Clause is to apprise the affected individual of, and permit adequate preparation for, an impending 'hearing.'" (emphasis added)); Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950) ("[The] right to be heard has little reality or worth unless one is informed that the matter is pending and can choose for himself whether to appear or default, acquiesce or contest."). Under the circumstances, the Court cannot fault Curto, a layperson, for her interpretation of the notice. She believed the notice related to someone "applying for" water service, and, because she already had water service, the notice did not relate to her. Indeed, the vagueness of the notice appears to have tainted Curto's subsequent attempts to contact the Water Authority and resolve the issue because, when she called, she inquired about this "new" customer's "application," rather than about the notice, the upcoming service, or the potential termination. See Docket # 44 at 6.

Defendants respond that, had Curto called the listed telephone number, any confusion would have been ameliorated, as a customer-service representative would have clarified that the Water Authority was "attempting to perform maintenance service on the water meter attached to her home." Docket # 35 at 12. In the first place, on a motion to dismiss, the Court cannot consider the Water Authority's allegation concerning what the telephone call would have revealed. Furthermore, the Court is skeptical that a defective notice can be deemed constitutionally adequate simply because it refers the reader to a telephone number for more information. See Wilson v. Health & Hosp. Corp. of Marion Cty., 620 F.2d 1201, 1215 (7th Cir. 1980) ("Nor[] do we regard as sufficient the non-communicative statement in the notice that if there were any questions regarding the notice given to the plaintiff, he could call a designated telephone number. This does not strike us as meeting the . . . requirement of being of such a nature as reasonably to convey the required information . . . ." (internal quotation marks omitted)); Henry v. Gross, 803 F.2d 757, 767 (2d Cir. 1986) (same). This is particularly so given that the language of the notice misdirected Curto into a different line of investigation — the possible "new customer."

Regardless, even if it can be said that Curto should have called the customer-service line and that such a call would have

*clarified* what was happening, Curto alleges that the Water Authority does not provide an opportunity to be heard to *challenge* the Water Authority's actions.[3]  See Docket # 30 at 2.  It is not difficult to imagine that there may be circumstances where the Water Authority mistakenly believes repairs are necessary at a home when, in fact, they are not, or where the Water Authority mistakenly sends a notice to the wrong property.  Based on the above authority, there is a case to be made that "some administrative procedure for entertaining [these kinds of] customer complaints prior to termination is required to afford reasonable assurance against erroneous or arbitrary withholding of essential services."  Memphis Light, 436 U.S. at 18.  The procedure might be as simple as "[t]he opportunity for a meeting with a responsible employee empowered to resolve the dispute."  Id.  Here, Curto alleges that employees in the Water Authority's customer-service department are not empowered to resolve these kinds of disputes.  See Docket # 28 at 4; Docket # 30 at 2.

For these reasons, Curto may have a viable procedural due process claim premised on the lack of (reasonably clear) notice and/or an opportunity to be heard prior to termination of water service.  The Court's conclusion here is necessarily tentative —

---

[3] Given Curto's allegation that the Water Authority provided no mechanism to address and correct the issue, the Water Authority's claim that Curto failed to exhaust her administrative remedies is rejected.  See Docket # 39 at 10-11.

as neither party has sufficiently briefed the legal issues involved — and is without prejudice to either side developing facts and marshalling additional legal authority in support of summary judgment.  Ultimately though, Curto's basic claim is troubling: the Water Authority claims the right to *permanently* deprive an unresponsive homeowner of water service a mere ten days after it places a single, vague notice about the need for maintenance on the homeowner's doorknob.  This claim merits further consideration.

Equal Protection:  Curto alleges that the Water Authority's misconduct was the result of age and sex discrimination, and she brings a claim for violation of her state and federal right to equal protection.  See, e.g., Docket # 30 at 6 (stating that, "but for the fact [she] is an older female she would have water service today").  Curto alleges no factual basis for this belief, however, and instead simply recites a series of conclusory statements asserting as much.  See id. at 5.  Defendants argue that the amended complaint is insufficient to state an equal protection claim.  The Court agrees.

Courts have held that the "naked allegation" that a defendant has unlawfully discriminated against the plaintiff is insufficient to survive a motion to dismiss, see, e.g., Albert v. Carovano, 851 F.2d 561, 572 (2d Cir. 1988) ("The naked allegation that

[defendants] selectively enforc[ed] the College rules . . . against plaintiffs . . . because they are black [or] Latin is too conclusory to survive a motion to dismiss." (internal quotation marks omitted)), as is a "formulaic recitation" that others outside the class were treated differently. See, e.g., Dellutri v. Vill. of Elmsford, 895 F. Supp. 2d 555, 572 (S.D.N.Y. 2012) ("The totality of Plaintiff's allegations regarding his Equal Protection claim is a conclusory assertion, without any detail, that Defendant differed in its treatment to other similarly situated property owners. Because this conclusory statement offers no details regarding other similarly situated individuals, this claim is dismissed." (internal citation and quotation marks omitted)); Bishop v. Best Buy, Co. Inc., No. 08-CV-8427, 2010 WL 4159566, at *6 (S.D.N.Y. Oct. 13, 2010) (statement — that "Caucasian and non-African American customers were shopping in BEST BUY during this time, and were not treated with racial animus and in a similar racial [sic] discriminatory manner" — would not be sufficient to withstand a motion to dismiss).

In this case, Curto offers nothing more than conclusory, generalized assertions that young and/or male customers were treated differently than her. See Docket # 30 at 5-6. She does not explain the factual basis for these assertions or describe any specific instances in which male/young customers were treated

differently despite facing similar circumstances as her.   While the Court recognizes that a plaintiff's burden at this stage is not onerous, see Hu v. City of New York, 927 F.3d 81, 97-98 (2d Cir. 2019), Curto does not provide any facts from which sex or age discrimination can be reasonably inferred.   Accordingly, this claim should be dismissed.

Right to Privacy:   Curto alleges that the Water Authority violated her state and federal right to "privacy."   Docket # 30 at 7.   To the extent Curto seeks to bring a claim that the Water Authority wrongfully disclosed private information, the Court agrees with Defendants that her allegations are too conclusory. See Docket # 35 at 22-23.   Federal and New York courts have recognized a "right to privacy in one's personal information" as a component of due process, Hancock v. Cty. of Rensselaer, 882 F.3d 58, 65 (2d Cir. 2018); Hunter v. City of New York, 58 A.D.2d 136, 141 (N.Y. App. Div. 1977), which extends to certain types of private information.   See Doe No. 1 v. Putnam Cty., 344 F. Supp. 3d 518, 540 (S.D.N.Y. 2018).

In the amended complaint, Curto alleges that a Water Authority employee "had an extensive conversation" about Curto's "private ECWA information."   Docket # 30 at 4.   Because the amended complaint fails to identify what information the Water Authority disclosed, the Court is unable to determine whether the right to

24

privacy attaches to the information.   Therefore, Curto fails to state a claim for relief.   Accord Phelan v. Sullivan, No. 10-CV-724, 2010 WL 2948217, at *7 (N.D.N.Y. July 7, 2010) (dismissing claim for violation of constitutional right to privacy where plaintiff only alleged that defendant "shared confidential information regarding plaintiff" (internal brackets omitted)).

Rights to "Liberty" and "Pursuit of Happiness": Curto alleges that the Water Authority's actions violated her rights to "liberty [and] pursuit of happiness."   Docket # 30 at 7.   As Defendants correctly argue, Docket # 35 at 23, the claim related to Curto's pursuit of happiness is not legally cognizable.   See Coffey v. United States, 939 F. Supp. 185, 191 (E.D.N.Y. 1996).   Similarly, a generic claim that the Water Authority violated Curto's "liberty" is insufficient to state a claim.

Takings Claim: Curto alleges that, once her water service was terminated, it became "illegal" for her to live in her home under local law and building codes, and that she has since become "homeless."   Id. at 4.   She also claims that the Water Authority's actions have deprived her of her "peaceful enjoyment of her property."   Docket # 30 at 7.   Read liberally, Curto appears to be arguing that the Water Authority's actions effected an unconstitutional taking of her property.   See Auracle Homes, LLC v. Lamont, No. 20-CV-829, 2020 WL 4558682, at *14 (D. Conn. Aug.

7, 2020) (discussing circumstances in which non-categorical regulatory takings are unconstitutional).

Defendants do not appear to construe the amended complaint to raise such a claim, and they develop no argument as to why such a claim fails as a matter of law.  Without developed argument, the Court has before it no basis to dismiss the claim.  The claim may therefore proceed.

Abuse of Power, Abuse of Authority, Failure to Perform Duties of Civil Servants:  Curto's claims for "abuse of power/authority" and "failure to perform the duties of a public/civil servant[]" do not encompass recognizable causes of action.  See, e.g., Mullin v. Balicki, No. 11-CV-247, 2019 WL 2315044, at *12 (D.N.J. May 31, 2019); Wallace v. Burns, No. 09-CV-6057, 2010 WL 2231859, at *3 (W.D. Ark. May 7, 2010).

If Curto is attempting to argue that the Water Authority's conduct amounts to a substantive due process violation, the amended complaint falls short.  "Substantive due process standards are violated only by conduct that is so outrageously arbitrary as to constitute a gross abuse of governmental authority."  Natale v. Town of Ridgefield, 170 F.3d 258, 263 (2d Cir. 1999).  While Curto has alleged that the Water Authority (or its employees) may have erred or otherwise acted wrongly in terminating her water service and entering her property, the allegations do not rise to the level

26

of a substantive due process violation.  See id. (noting that substantive due process claim cannot be established "simply by proving that someone did not obtain what he or she is entitled to under state law"); Lee v. Gardner, No. 18-CV-1478, 2020 WL 1862068, at *2 (D. Conn. Apr. 14, 2020) (no substantive due process violation where plaintiff alleged that code enforcement officer trespassed on her property and issued citations).

42 U.S.C. §§ 1983, 1985:  Curto references Sections 1983 and 1985 among her claims.  See Docket # 30 at 7.  Those provisions are not freestanding causes of action, however, and are dismissed to that extent.  See Carrero v. N.Y.C. Housing Auth., 890 F.2d 569, 575-76 (2d Cir. 1989) (noting that § 1985, like § 1983, "creates no substantive rights but provides only a remedy for violations of substantive rights created elsewhere").

Common Law Trespass:  Curto alleges that, on March 2, 2017, March 21, 2017, and September 16, 2018, Water Authority employees illegally entered her property.  Docket # 30 at 4, 7.  The Water Authority argues that this claim fails because state law and the Water Authority tariff empower its employees to enter a customer's property to notify the customer about water-service matters and to terminate water service.

The Court cannot recommend that this claim be dismissed. "Under New York common law, trespass is an intentional entry onto

27

the property of another without justification or permission." Wierzbic v. Howard, 331 F.R.D. 32, 47 (W.D.N.Y. 2019) (internal quotation marks omitted).  To avoid liability, the Water Authority relies on its claimed justification or privilege to enter Curto's property.

Even accepting the Water Authority's claimed privilege, an entry pursuant to a privilege must be "for the purpose for which the privilege is given" and only to the extent "reasonably necessary . . . to perform the duty or exercise the authority." Restatement (Second) of Torts § 211 cmts. c, f (1965).  Curto's allegations make clear that Water Authority employees acted beyond the scope of any privilege to which they would be entitled.  On March 21, 2017, a Water authority employee placed a notice on Curto's doorknob — perhaps a privileged act — and then proceeded to remain on the property and have an "extensive conversation" with Curto's neighbor, despite the fact that the purpose of the entry had been fulfilled and despite the "NO TRESPASSING" signs on the property.  Cf. Rager v. McCloskey, 111 N.E.2d 214, 216-17 (N.Y. 1953) (deputy sheriff's original entry onto property to serve process was lawful but became unlawful when he "refused repeated requests to leave and persisted in remaining [at the property] for a not inconsiderable period").  On March 21, 2017, a Water Authority employee entered the property to terminate water

service, left the property, "*and then* re-entered the [] property, before leaving and driving away." Docket # 30 at 4 (emphasis added). The first entry on that day may have been privileged, but the Water Authority fails to explain how the second comes within the scope of the privilege. Finally, on September 16, 2018, several Water Authority employees "repeatedly" walked onto Curto's property, but apparently did not conduct any utility business on the property.

Thus, reading the amended complaint liberally and accepting the factual allegations as true, Curto alleges that Water Authority employees exceeded the scope of any privilege and did not act consistent with the purpose of the privilege. In its motion to dismiss, the Water Authority does not discuss this nuance — it merely argues that the entries were privileged.[4]   See Docket # 35 at 29-30. Accordingly, the Court declines to dismiss the trespass claim at this juncture.[5]

Harassment, Retaliation, Intimidation:  Curto raises claims for "harassment," "retaliation," and "intimidation." Docket # 30

---

[4] The Water Authority does not argue that it cannot be held vicariously liable for the trespasses of its employees.

[5] It is unclear whether Curto is also attempting to raise a Fourth Amendment claim based on the allegedly unlawful entries onto her property. If she is, such a claim would fail as to the Water Authority because Curto does not plausibly allege that the trespasses occurred "pursuant to a municipal policy or custom." Patterson v. Cty. of Oneida, N.Y., 375 F.3d 206, 226 (2d Cir. 2004).

at 7.  Defendants argue that these do not appear to be recognizable causes of action, and Curto fails to clarify the basis for these claims — a statute, the Federal or State Constitution, common law, etc.  Even aside from the issue of whether such causes of action exist, the alleged misconduct does not rise to the level of harassment, retaliation, or intimidation, as those words are ordinarily understood. At most, the amended complaint indicates that the Water Authority wrongly terminated Curto's water service and overbilled her, and some employees trespassed on her property on a few isolated occasions.  There is nothing to suggest that these actions occurred as retaliation for protected activity or as part of a harassment campaign.  These claims are deficient both factually and legally and should be dismissed.

Negligent Hiring, Training, Retention, and Employment: Curto has not sufficiently alleged her claim that the Water Authority negligently hired, supervised, retained, and trained those Water Authority employees who trespassed on her property and terminated water service.  As to the employees' trespassing, Curto does not allege that the Water Authority "knew or should have known of [any] employee's propensity for the [trespassory] conduct which caused the injury prior to the injury's occurrence." Ehrens v. Lutheran Church, 385 F.3d 232, 235 (2d Cir. 2004) (internal quotation marks omitted).  As to the termination of water service,  Curto cannot

succeed on her claim because the employees' actions appear to be in accordance with the Water Authority's own policies and practices, and therefore any employees would have been acting within the scope of their employment when they terminated Curto's water service. See Velez v. City of New York, 730 F.3d 128, 136-37 (2d Cir. 2013) ("To maintain a claim against a municipal employer for the negligent hiring, training, and retention of a tortfeasor under New York law, a plaintiff must show that the employee acted outside the scope of her employment." (internal quotation marks omitted)). Dismissal is appropriate.

Fraud: Curto's fraud claim fails. "The elements of fraud in New York include: a false representation of material fact, knowledge by the party who made the representation that it was false when made, justifiable reliance by the plaintiff, and resulting injury." Evans v. Ottimo, 469 F.3d 278, 283 (2d Cir. 2006). It is not clear which of the Water Authority's alleged misconduct Curto believes constitutes fraud. To the extent she is asserting that the Water Authority fraudulently claimed there was an "application for service," Curto does not allege any justifiable reliance on her part. To the extent she is asserting that the Water Authority's billing practices were fraudulent, she does not sufficiently plead facts that "give rise to a strong inference of

fraudulent intent." Hadami, S.A. v. Xerox Corp., 272 F. Supp. 3d 587, 595 (S.D.N.Y. 2017).

Defamation: Curto alleges that the Water Authority committed "slander, libel and defamation." Docket # 30 at 7. "A claim for 'defamation' is an umbrella term that incorporates the twin torts of libel and slander. Defamation is the injury to one's reputation either by written expression, which is libel, or by oral expression, which is slander." Cortes v. Twenty-First Century Fox Am., Inc., 285 F. Supp. 3d 629, 641 (S.D.N.Y. 2018) (internal citations and quotation marks omitted). One element of a defamation claim under New York law is a "false statement." Restis v. Am. Coalition Against Nuclear Iran, Inc., 53 F. Supp. 3d 705, 716 (S.D.N.Y. 2014).

In this case, Curto does not identify a false statement that the Water Authority made to another. At most, she alleges that a Water Authority employee disclosed confidential information to her neighbor. Docket # 30 at 4. That allegation falls short of identifying either the defamatory statement or of explaining its falsity. The defamation claim should be dismissed.

Intentional and Negligent Infliction of Emotional Distress: Curto fails to state a claim for either intentional or negligent infliction of emotional distress. Under New York law, "[f]or both negligent and intentional infliction of emotional distress, a

plaintiff must show that the defendant's conduct is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." Pennington v. City of Rochester, No. 13-CV-6304, 2018 WL 3023383, at *2 (W.D.N.Y. June 18, 2018). With respect to the trespasses and the termination of service, nothing Curto alleges approaches that standard. See id. (dismissing claims for intentional and negligent infliction of emotional distress, where plaintiff alleged that defendant police officer "wrongfully entered her home under the auspices of performing a welfare check on her"). Compare Gallagher v. Consolidated Edison Co. of N.Y., 162 A.D.2d 657, 658 (N.Y. App. Div. 1990) (dismissing claim for intentional infliction of emotional distress where utility threatened termination of electrical service), with Macey v. N.Y.S. Elec. & Gas Corp., 80 A.D.2d 669, 670 (N.Y. App. Div. 1981) (claim for intentional infliction of emotional distress sufficiently pled where plaintiff alleged that electric utility "refused to restore power to plaintiff until she legally separated from her husband").

Other Generic Claims: Curto alleges generic claims that the Water Authority violated her "civil rights and human rights under state and federal law" and conspired to "violate [her] rights and to violate the law." Docket # 30 at 7. Standing alone, these

33

vague allusions to possible claims are insufficient to survive a motion to dismiss.

Punitive Damages: Defendants ask the Court to strike Curto's request for punitive damages.  The Court sees no reason to do so at this early stage.  See Williams v. Coca Cola Co., No. 15-CV-1534, 2017 WL 1214503, at *5 (N.D.N.Y. Mar. 31, 2017) ("Punitive damages are not a separate cause of action and, thus, courts generally find motions to strike punitive damages at the motion to dismiss stage to be premature.").

Claim(s) relating to Water Authority's Billing Practices:  As noted above, Curto alleges that, by miscalculating her water usage, the Water Authority overcharged her on a number of her water bills. It is unclear whether Curto believes such conduct rises to the level of a constitutional violation, or whether she is instead raising a mere contractual claim.  In either case, Curto has not sufficiently articulated this claim.  The Water Authority's tariff states the following concerning water bills:

> Any bill for water supplied or service rendered will be considered a proper charge unless protest is made to the Authority within fifteen (15) days after the mailing of a bill.
>> A. In case of dispute as to payment of a bill, the customer will be required to present the receipted bill, canceled check or other evidence of payment.
>> B. The Authority will, upon request of the customer or for other reasons, make an inspection of the premises on account of apparently excessive bills.
>> . . .

Dkt No. 9-1 at 31.   The tariff also permits a customer to request that her water meter be tested, if there is a dispute "involving the question as to the accuracy of the meter."   Id. at 29.

Curto alleges that her bills were inaccurate, but she does not allege that she made use of the above procedure to rectify the error, nor does she allege that she contacted the Water Authority about the issue.   Without more, the Court cannot discern what Curto's theory of liability is, as the Water Authority has provided a seemingly adequate procedure to dispute water bills and rectify errors.   Moreover, the tariff indicates that charges will be deemed proper if not disputed within fifteen days; because there is no allegation that Curto disputed the charge, it is unclear how she can dispute it now.   Cf. Silvermark Corp. v. Rosenthal & Rosenthal Inc., 856 N.Y.S.2d 503 (N.Y. Sup. Ct. 2008) (table) (concluding that dispute over charges had been "waived" and dismissing breach of contract claim, where contract gave company "sixty days to object" to the charge but company failed to raise timely objection).

Therefore, the Court does not have sufficient information before it to conclude that Curto states a plausible claim for relief based on the alleged overcharging.   That claim should be dismissed.

### III.   Curto's Request for Sanctions and Defendants' Argument on Untimeliness

In her briefing, Curto requests sanctions against defense counsel.  See Docket # 38 at 9.  Curto's argument is without merit, and her request is denied.

Defendants argue that Curto's opposition brief was untimely by four days.  See Docket # 39 at 7.  The Court declines to reject the opposition on that ground.

### IV.   Opportunity to Amend

Curto should not be given leave to amend her complaint.  Curto has already had an opportunity to cure the defects that Defendants and this Court previously identified, and she does not presently offer any other proposed amendments.  See McLaughlin v. Anderson, 962 F.2d 187, 195 (2d Cir. 1992).  Furthermore, it is unlikely that an additional round of amendments and Rule 12(b)(6) motion practice will be a useful exercise.  This litigation should proceed to discovery, so that the underlying facts may be investigated and Curto's remaining claims can be fully litigated.

### CONCLUSION

For the reasons stated above, it is the Court's Report and Recommendation that Defendants' motion to dismiss (Docket # 33) be **GRANTED IN PART and DENIED IN PART**.  All claims against Executive

Director Jann should be dismissed.   All claims against the Water
Authority should be dismissed, except for: (1) the procedural due
process claim; (2) the takings claim; and (3) a state-law trespass
claim.

_____
JONATHAN W. FELDMAN
UNITED STATES MAGISTRATE JUDGE


Dated:      Rochester, New York
            March 31 , 2021

37

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report and Recommendation in accordance with Rule 72(b)(2) of the Federal Rules of Civil Procedure.

The district court will ordinarily refuse to consider on <u>de novo</u> review arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance. <u>See, e.g.</u>, <u>Paterson-Leitch Co., Inc. v. Mass. Mun. Wholesale Elec. Co.</u>, 840 F.2d 985 (1st Cir. 1988).

**<u>Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.</u>** <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Wesolek v. Canadair Ltd.</u>, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) of the Local Rules of Civil Procedure for the Western District of New York, "[w]ritten objections . . . shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority." **<u>Failure to comply with the provisions of Rule 72(b) may result in the District Court's refusal to consider the objection.</u>**

SO ORDERED.

_____
Jonathan W. Feldman
United States Magistrate Judge

Dated:   March **31**, 2021
         Rochester, New York

38